**Mattie L. HORNE, Plaintiff,**

v.

**CROWN CENTRAL PETROLEUM, INC., Defendant.**

Civ. A. No. 0–90–1873–17.

United States District Court,
D. South Carolina,
Rock Hill Division.

Aug. 5, 1991.

William H. Godbold of Brown & Godbold, Rock Hill, S.C., for plaintiff.

G. Daniel Ellzey, Jonathan P. Pearson, Michael D. Carrouth of Ogletree, Deakins, Nash, Smoak & Stewart, Columbia, S.C., for defendant.

## ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

This matter is before the court on defendant Crown Central Petroleum, Inc.'s (Crown) motion for summary judgment. The issues were thoroughly briefed by plaintiff Mattie L. Horne (Horne) and defendant Crown and argued before this court on July 1, 1991. For the reasons set forth below, the court concludes that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56.

Crown, a Maryland corporation, operates a number of convenience stores in South Carolina. These stores were purchased from Fast Fare in 1986. Horne began her employment with Fast Fare in 1981 as a store clerk. She continued her employment with Crown after it purchased the stores. Plaintiff received two promotions and was a store manager by the time she became a Crown employee. Horne worked as manager of several different stores. At the time of her resignation, February 10, 1990, plaintiff had been manager of the Tega Cay, South Carolina, store for over two years.

Horne was paid a salary based on a forty-eight hour work week. She claims her job required her to work considerably more than forty-eight hours per week. Plaintiff contends she is due overtime pay for these excess hours pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C.A. §§ 201, *et seq.* (West 1978 & Supp.1991).

Section 207 of 29 U.S.C.A. requires employers to pay overtime to employees who work in excess of forty hours per week. Employers are not required to pay overtime to employees who work in a *bona fide*

executive capacity. 29 U.S.C.A. § 213(a)(1). The regulations defining this executive exemption are promulgated at 29 C.F.R. §§ 541.1, *et seq.* (1991).

Two tests are provided for determining whether the exemption applies to a particular employee. The amount of money the employee is paid each week determines which test is appropriate. Horne was paid a weekly salary of $357 from April 5, 1987, until her resignation. The "short test" is applicable to employees, such as Horne, who are paid in excess of $250 per week. 29 C.F.R. § 541.1(f); *Clark v. J.M. Benson Co.*, 789 F.2d 282 (4th Cir.1986). To meet the "short test" the employee's primary duty must "consist[ ] of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and include[ ] the customary and regular direction of the work of two or more other employees therein...." 29 C.F.R. § 541.-1(f).

■■■ The determination of whether an employee's primary duty is managerial is guided by five factors: (1) amount of time spent on management duties; (2) relative importance of the management tasks compared to the other duties performed; (3) frequency of exercise of discretionary powers; and (4) relative freedom from supervision. The analysis is made on a case by case basis. 29 C.F.R. § 541.103. "[I]t is clear that where an enterprise comprises more than one establishment, the employee in charge of each establishment may be considered in charge of a subdivision of the enterprise." 29 C.F.R. § 541.104(b). At least one other court has found that convenience stores are customarily recognized departments or subdivisions of an enterprise. *Russell v. Mini Mart, Inc.*, 711 F.Supp. 556 (D.Mont.1988). The evidence here clearly indicates that the stores in which Horne worked fit the criteria of subdivisions of defendant's enterprise.

Using the "short test" analysis, the court finds that Horne's primary duty was the management of her store. The amount of time spent on managerial duties is one factor to consider. Horne indicates that her duties consisted of supervising store employees, including recruiting, hiring and firing, setting work hours and vacations, and seeing that the employees kept the store clean; completing various paperwork and reports; making bank deposits; ordering merchandise; checking in vendors; insuring proper merchandising of inventory; enforcing company work policies and procedures; and maintaining store security. The court makes no exact finding of the percentage of plaintiff's work time spent on these management tasks beyond noting that such functions would necessarily consume a significant portion of the work day. From time to time a number of the functions were no doubt performed simultaneously with assisting the store clerks in waiting on customers.

That the amount of time spent on non-management tasks is greater than 50 percent is not dispositive, particularly when non-management duties are performed simultaneous to the supervision of employees or other management tasks and other factors support a finding that the employee's primary duty is managerial. 29 C.F.R. § 541.103; *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141 (3d Cir.1984) (as amended) (coal mine; 31.65 percent managerial); *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir.1982) (fast food restaurant; time spent on managerial duties not a "short test" element); *Donovan v. Burger King Corp.*, 675 F.2d 516 (2d Cir. 1982) (fast food restaurant; less than 50 percent managerial); *Russell*, 711 F.Supp. 556 (convenience store; less than 50 percent managerial).

The second factor is the relative importance of the management tasks as opposed to the non-management tasks performed. *Donovan* viewed this as a measure of the significance of the managerial tasks to the success of the facility. 675 F.2d at 521. In addition to her base salary, Horne received bonuses tied to her store's profitability. Horne stated that whatever happened at her store, good or bad, she received the praise or blame. Although when time permitted, hiring and firing decisions were approved by her superiors, plaintiff had the

authority to, and on occasion did, hire and fire employees on the spot. Horne also played a key role in security for her store. The tasks regularly performed by store clerks were not nearly as crucial to the store's success as were the management functions. The clerks merely rowed the boat; Horne charted and steered its course.

The frequency of the exercise of discretionary powers is the third factor. Horne's supervisor came by the store only a few times a week. Generally, it was up to Horne to solve problems and make decisions when the need arose. Horne made decisions about staffing, security surveillance scheduling and other matters necessary to the store's operation. Defendant's store managers do have detailed policies and procedures to follow concerning store operations. Additionally, Crown requires that its store managers work certain hours. Neither of these circumstances negates the significance of Horne's exercise of discretion as the person solely in charge of the store. "Ensuring that company policies are carried out constitutes the 'very essence of supervisory work.'" *Donovan v. Burger King Corp.*, 672 F.2d at 226 (citations omitted); *Russell*, 711 F.Supp. at 559.

Whether or not the employee is free from direct supervision is the fourth factor. As noted earlier, plaintiff's supervisor came by her store only a few times a week. She could call the central office if she needed direction at other times. However, "[b]eing available for advice is in no sense the exercise of supervision." *Donovan*, 675 F.2d at 522. Horne was relatively free from direct supervision.

The fifth factor considered is the relationship of the employee's pay to that of those she supervises. Plaintiff concedes that she made a great deal more money than her clerks who were paid from $4.50 to $5.10 an hour. The difference in pay brings this factor in line with finding that Horne is within the executive exemption.

The final criteria for application of the executive exemption using the "short test" is the customary and regular direction of the work of two or more employees. Plaintiff meets this criteria. Horne admits she supervised as many as five or six, and always at least two, employees. Thus, Crown properly interpreted the FLSA regulations and was justified in paying Horne a straight salary without overtime pay.

Therefore, in accordance with the foregoing reasoning the court hereby grants Crown's motion for summary judgment.

IT IS SO ORDERED.